United States District Court
Southern District of Texas
**ENTERED**
September 30, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| KAY PORTER, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF BENJAMIN PORTER, "Plaintiff," | § | |
| v. | § | Civil Action No. 1:25-cv-00255 |
| STARR COUNTY HOSPITAL DISTRICT; REGENCY IHS OF RAYMONDVILLE, LLC D/B/A WINDSOR NURSING & REHABILITATION CENTER OF RAYMONDVILLE; and REGENCY INTEGRATED HEALTH SERVICES, LLC, "Defendants." | § | |

## ORDER

Before the Court are Plaintiff's "First Amended Complaint" (Dkt. No. 15) ("FAC"); "Defendants' Amended 12(b)(6) Motion to Dismiss" (Dkt. No. 21) ("Amended MTD"); "Plaintiff's Response in Opposition to Defendants' Amended Motion to Dismiss Pursuant to Federal Rule 12(b)(6)" (Dkt. No 23) ("MTD Response"); the Magistrate Judge's "Report and Recommendation to Grant Defendant's Motion to Dismiss" (Dkt. No. 25) ("R&R"); "Plaintiff's Objections Pursuant to 28 U.S.C. § 636(b)(1)" (Dkt. No. 26) ("Objections"); and "Defendants' Response to Plaintiff's Objections to the Magistrate Report and Recommendation to Grant Defendants' Motion to Dismiss" (Dkt. No. 28) ("Response"). For these reasons, the Court **OVERRULES** Plaintiff's Objections (Dkt. No. 26) and **ADOPTS** the R&R (Dkt. No. 25).

### I. BACKGROUND

This action arises from the death of Benjamin Porter on August 27, 2024, while a resident at Defendant Regency IHS of Raymondville d/b/a Windsor Nursing & Rehabilitation Center of Raymondville ("Windsor"). Dkt. No. 15 at ¶¶ 6, 29, 42. Plaintiff Kay Porter, Benjamin Porter's widow, asserts several claims individually and on his behalf against Windsor, Starr County Hospital District ("Hospital District"), and Regency Integrated Health Services, LLC ("Regency"). *Id.* ¶¶ 68-96.

As relevant here, Plaintiff brings claims under 42 U.S.C. § 1983, alleging that Defendants, acting under color of state law, chronically understaffed Windsor, resulting in deficient care and Benjamin Porter's ensuing health complications. *See id.* ¶¶ 68-73. The FAC alleges that the Hospital District owns Windsor and, "acting through Windsor," was responsible for its "policies, practices, supervision, implementation, and conduct." *Id.* ¶¶ 11, 16. It also alleges that Regency, a limited liability company, "owned, managed, operated, supervised, and/or staffed Windsor." *Id.* ¶¶ 21-24.

The Magistrate Judge issued an R&R on this case, recommending that this Court: 1) grant Defendants' Amended MTD (Dkt. No. 21); 2) dismiss Plaintiff's federal-law claims with prejudice; 3) dismiss Plaintiff's state-law claims without prejudice; and (4) direct the Clerk of Court to close this case. Dkt. No. 25 at 11. The R&R found that the FAC failed to sufficiently plead § 1983 claims against any Defendant. *See id.* at pp. 5-10. Plaintiff timely filed her Objections to the R&R, *see* Dkt. No. 26, and Defendants filed a response opposing the Objections, *see* Dkt. No. 28.

The parties stipulate only that the Hospital District is a state actor for purposes of Plaintiff's § 1983 claims. *See* Dkt. No. 15 at ¶ 10 & Dkt. No. 21 at p. 3. They dispute, however, (1) whether Hospital District may be held liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) and (2) whether Windsor and Regency acted under color of state law in the allegedly deficient care provided during Benjamin Porter's residency at Windsor. *See* Dkt. No. 21 at p. 5-8; Dkt. No. 23 at p. 5-8. Plaintiff's Objections maintain that the FAC sufficiently pleads § 1983 liability as to each Defendant but request leave to file a second amended complaint should the Court conclude otherwise. *See generally* Dkt. No. 26.

## II. DISCUSSION

When a party objects to a magistrate judge's report and recommendation, the Court reviews the matter de novo. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). Having reviewed the matter de novo, the Court finds Plaintiff's Objections without merit and concludes that she has not shown good cause for leave to file a second amended complaint.

### A. PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S DENIAL OF LEAVE TO FILE A SECOND AMENDED COMPLAINT.[1]

[1] Plaintiff captions her objection to the R&R's recommendation that this Court deny leave to file a second amended complaint "Objection 3." *See* Dkt. No. 26 at 9. However, because Plaintiff's preceding objections ("Objection 1" and

Plaintiff objects to the Magistrate Judge's denial of leave to file a second amended complaint. Dkt. No. 26 at 9-11. The Objections also separately request that this Court grant Plaintiff leave to file a second amended complaint. *Id.* at 11.

Rule 15 of the Federal Rules of Civil Procedure generally governs a request for leave to amend pleadings. Once the deadline to amend pleadings has expired, however, Rule 16's more stringent good-cause standard applies. *United States of Am. ex rel. Gentry v. Encompass Health Rehab. Hosp. of Pearland, L.L.C.*, 157 F.4th 758, 763 (5th Cir. 2025). In determining whether good cause exists, courts should consider: (1) the movant's reason for untimely seeking leave, (2) the importance of the proposed amendments, (3) the potential prejudice to the nonmovant, and (4) whether a continuance may cure that prejudice. *Id.* Only upon a showing of good cause under Rule 16 may the Court proceed to Rule 15's more liberal standard. *Adams Fam. Tr. v. John Hancock Life Ins.*, 424 F. App'x 377, 381 (5th Cir. 2011) (internal citations omitted).

Because the deadline to amend pleadings expired on May 1, 2026, Dkt. No. 20, it must be determined whether Plaintiff's request for leave to amend satisfies the more stringent good-cause standard. The Court finds it does not.

First, Plaintiff offers no explanation for failing to seek leave timely to file a second amended complaint. Dkt. No. 26 at 9-11. Plaintiff maintains that she can add factual allegations addressing the deficiencies identified by the R&R, *id.* at 9,11, but does not explain why those allegations could not have been included in her original or "First Amended Complaint" ("FAC"). *See generally id.* at 9-11. Second, Plaintiff's request comes after multiple rounds of briefing from both parties, including Defendants' initial motion to dismiss, Plaintiff's FAC, Defendant's Amended MTD, and Plaintiff's MTD response. *See* Dkt. Nos. 13, 15, 21, & 23. Permitting another amendment would require Defendants to respond yet again to claims and deficiencies they have addressed through multiple rounds of briefing. And though a continuance could provide more time, it would not eliminate the costs associated with another round of pleading and motion practice.[2] See *S&W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 537 (5th Cir. 2003)

"Objection 2") similarly implicate the prospect of leave to amend, the Court addresses "Objection 3" as a threshold matter.

[2] Even under Rule 15's more liberal standard, the Fifth Circuit has affirmed denial of leave to amend where represented plaintiffs had multiple opportunities to articulate their theory through pleadings and briefing. *See Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 608 (5th Cir. 1998).

(explaining that a district judge has discretion to control their docket by refusing to give ineffective litigants a second chance to develop their case).

Because Plaintiff has had ample opportunity to develop her § 1983 claims against Defendants and has not shown good cause for another amendment after the scheduling order deadline, the Court **OVERRULES** "Objection 3" (Dkt. No. 26 at 9-11) and **ADOPTS** the R&R insofar as it recommends denying further leave to amend.[3] Plaintiff's alternative request for leave to file a second amended complaint is also **DENIED**.

### B. PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S CONCLUSION THAT THE FAC FAILS TO PLEAD A POLICY OR CUSTOM ATTRIBUTABLE TO STARR COUNTY HOSPITAL DISTRICT.

Plaintiff objects to the R&R's conclusion that the FAC fails to plead an official policy sufficient to subject Hospital District to municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), and its progeny. Dkt. No. 26 at 2-7. Plaintiff argues that, by focusing on the absence of a formally adopted policy, the R&R discounts Plaintiff's alternative theory that the Hospital District maintained a persistent and widespread custom of inadequate staffing and budgeting. *Id.*

As the R&R explains, a viable *Monell* claim requires "a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694). An "official policy" may consist of a policy formally adopted by an official policymaker, *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 168 (5th Cir. 2010), or a "persistent widespread practice" that, although not formally adopted, is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* at 169 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). The R&R concludes that Plaintiff fails to plead sufficient facts establishing the official policy element. Dkt. No. 25 at 7-13.

According to the Objections, the FAC plausibly alleges a widespread custom because it alleges: (1) deficient care throughout Benjamin Porter's residency at Windsor; (2) staffing levels at Windsor that fell below the applicable benchmark nearly every day of that residency, (3) and

---

[3] To the extent that Plaintiff objects specifically to the R&R's determination that further amendment would be futile under Rule 15, the Court need not reach that issue. Because Plaintiff has not satisfied Rule 16's threshold good-cause requirement, whether further amendment would be futile is immaterial to the disposition of her request for leave to amend.

knowledge of those deficiencies by Windsor's "managers, owners, and operators," who failed to correct them. Dkt. No. 26 at 3. Plaintiff contends these allegations "identify a measurable practice extending over months and a budgeting mechanism through which Plaintiff alleges that practice was maintained." *Id.*

These allegations may describe a persistent condition at Windsor over the course of Benjamin Porter's residency, but they do not plausibly allege a persistent and widespread custom of the Hospital District. As Plaintiff acknowledges, the relevant inquiry is not cabined to a particular individual or location but asks whether the challenged practice is sufficiently widespread to constitute the governmental entity's own custom. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 850-851 (5th Cir. 2009). A pattern must have occurred "for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice." *Id.* at 850 (internal citation omitted).

The FAC does not plausibly make that showing. First, its factual allegations focus almost exclusively on staffing, budgeting, and care at Windsor, not Hospital District. And the few allegations directed specifically at Hospital District concern its relationship with Windsor. *See* Dkt. No. 15 ¶¶ 11-16, 58. The FAC does not allege similar staffing or budgeting practices at other facilities owned, operated, or managed by the Hospital District. Nor does the FAC otherwise provide factual context from which the Court could infer that Windsor's alleged deficiencies reflected a settled practice of the Hospital District rather than conditions particular to Windsor. *See Peterson*, 588 F.3d at 850 (explaining that the frequency of alleged misconduct must be considered in context).

Second, the FAC's allegations concerning ownership of Windsor undermine rather than establish the Hospital District's alleged role in promulgating the allegedly deficient staffing policies. It alleges that Regency, just like Hospital District, "owned, managed, operated, supervised, and/or staffed Windsor." Dkt. No. 15 ¶¶ 16, 20, 24. What's more, the FAC largely groups those entities together as "Defendants" when alleging responsibility for challenged staffing and budgeting practices. *Id.* ¶¶ 58, 68-73. Those collective allegations do not identify which entity established, maintained, or controlled the practices at issue and thus do not plausibly connect Windsor's alleged chronic understaffing to a widespread custom attributable specifically to the Hospital District. Allegations that Windsor was persistently understaffed over the course of

Benjamin Porter's residency do not, without more, plausibly establish that persistent understaffing was an expected and accepted practice of Hospital District itself.

Plaintiff separately objects that the R&R places undue significance on the FAC's failure to identify a specific policymaker. Dkt. No. 26 at 5. Plaintiff relies on *Groden v. City of Dallas*, which holds that a plaintiff need not plead the specific identity of the policymaker to survive dismissal. 826 F.3d 280, 284-285 (5th Cir. 2016). But *Groden* does not dispense with the requirement that the plaintiff "plead facts that show that the [defendants] acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker." *Id.* at 282. As explained above, the FAC does not plausibly allege a formal policy or widespread custom attributable to Hospital District, the only stipulated state actor in this case. Its failure to plead the specific identity of a policymaker therefore does not alter the outcome.

Accordingly, the Court **OVERRULES** "Objection 1" and **ADOPTS** the R&R's conclusion that the FAC fails to plausibly plead the requisite policy or custom element.

### C. Plaintiff's Objection to Magistrate Judge's Conclusion that the FAC fails to Plausibly Allege that Either Windsor or Regency is a State Actor.

Plaintiff also objects to the R&R's conclusion that the FAC fails to plausibly allege that either Windsor or Regency is a state actor. *See* Dkt. No. 26 at 8-9. Plaintiff challenges the R&R's focus on "coercion and close-nexus principles" under *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1348 (5th Cir. 1985), arguing that the Fifth Circuit recognizes "several routes to state action, including entwinement." Dkt. No. 26. at 8. The Court finds Plaintiff's objection without merit.

A private actor is subject to constitutional liability only when the challenged conduct is "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). The Supreme Court has outlined various tests to determine whether a private party has acted under color of state law. See *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 352 (5th Cir. 2003) (summarizing tests). Relevant here is the "entwinement" test, which considers whether a private entity is "entwined with governmental policies" or the government is "entwined in its management or control." *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 444 (5th Cir. 2025) (quoting *Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

The state-action inquiry "begins by identifying the specific conduct of which the plaintiff complains," because a defendant "may be a state actor for some purposes but not for others." *Pearson*, 133 F.4th at 444 (internal citations omitted). Here, the challenged conduct concerns Windsor's (a private entity's) alleged practice of chronic understaffing. The relevant inquiry, therefore, is whether the FAC plausibly alleges Hospital District's involvement in Windsor's staffing decisions such that it could be held constitutionally liable as a state actor.

The FAC does not plausibly make that showing. Plaintiff alleges that the Hospital District, "acting through Windsor," was responsible for Windsor's "policies, practices, supervision, implementation, and conduct" and for the appointment, training, supervision, and conduct of its personnel. Dkt. No. 15 ¶ 16. But the FAC offers no supporting facts establishing the nature or extent of the Hospital District's involvement in Windsor's management or control. Nor does it identify any role the Hospital District played in developing, adopting, enforcing, or maintaining the staffing and budgeting practices underlying Plaintiff's claims.

Indeed, the FAC also alleges that Regency, a private entity, "owned, managed, operated, supervised, and/or staffed Windsor." Dkt. No. 15 ¶¶ 16, 20. In alleging that Windsor's "managers, owners, and operators" knew of its alleged chronic understaffing yet failed to adjust its budget to provide additional staff, the FAC does not distinguish the Hospital District's role from that of Regency or the other entities allegedly responsible for Windsor's operations. *Id.* ¶ 58. Rather, the FAC's collective allegations obscure the extent to which the challenged practices were attributable to governmental, rather than private, decision making.

Thus, even accepting the FAC's allegations concerning the Hospital District's general responsibility for Windsor's operations, the FAC fails to plead facts plausibly establishing that the Hospital District was sufficiently entwined in Windsor's management or control to render the challenged conduct attributable to the State. The Court thus **OVERRULES** "Objection 2" and **ADOPTS** the R&R's finding that the FAC fails to plausibly allege that Regency and Windsor are state actors for § 1983 purposes.

## III. CONCLUSION

For these reasons, the Court **OVERRULES** Petitioner's Objections (Dkt. No. 26) and **ADOPTS** the R&R (Dkt. No. 25). It is further **ORDERED** that:

1. Defendants' Amended Motion to Dismiss (Dkt. No. 21) is **GRANTED**;
2. Plaintiff's federal law claims are **DISMISSED with prejudice**;
3. Plaintiff's state-law claims are **DISMISSED without prejudice**;
4. Plaintiff's request for leave to file a second amended complaint, Dkt. No. 26 at 11, is **DENIED**;
5. The Clerk of Court is **INSTRUCTED** to close this case.

Signed on this 30th day of September 2026.

Rolando Olvera
United States District Judge